IN UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MOBLEY | ) | CASE NO. |
| 7812 Cherokee Lake Lane, Apt 201 | ) | |
| Memphis, Tennessee 38119 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| FORD MOTOR COMPANY | ) | |
| c/o CT Corporation System, Statutory Agent | ) | **JURY DEMAND ENDORSED** |
| 4400 Easton Commons Way Suite 125 | ) | **HEREIN** |
| Columbus Ohio 43219 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Christopher Mobley, by and through undersigned counsel, as his Complaint against Defendant, states and avers the following:

## PARTIES AND VENUE

1. Mobley is a resident of the city of Memphis, County of Shelby, State of Tennessee.

2. Ford Motor Company ("Ford") is a foreign corporation licensed and registered to do business in Ohio.

3. At all relevant times, Ford has met the definition of an "employer" under all applicable statutes.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Mobley is alleging federal law claims regarding the deprivation of Mobley's rights under Title VII and Section 1981.

5. This Court has supplemental jurisdiction over Mobley's state law claims pursuant to 28 U.S.C. § 1367, as Mobley's state law claims are so closely related to his federal law claims

that they form part of the same case or controversy under Article III of the United States Constitution.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

7.     Within 300 days of the conduct alleged below, Mobley filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"), Charge No. 532-2019-01272 against Defendant.

8.     On or about August 6, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Mobley regarding the Charge of Discrimination.

9.     Mobley received his Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), which has been attached hereto as Plaintiff's Exhibit 1.

10.    Mobley filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

11.    Mobley has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## FACTS

13.    Mobley is a former employee of Defendant.

14.    Mobley is African American.

15.    Defendant hired Mobley on or around May 7, 2018.

16.    Defendant employed Mobley as a Controls Engineer.

17. At all times, material herein, Defendant owned and operated a facility located at 5600 Henry Ford Blvd. Brook Park, Ohio 44142. ("Cleveland Facility")

18. At all times, material herein, Defendant employed Mobley at the Cleveland Facility.

19. At all times relevant herein, Mobley was the only African American control engineer employed at the Cleveland Facility.

20. Upon hiring new employees, Defendant emails a personnel announcement to its staff, acknowledging the new hire. ("Welcome Email")

21. On or around May 17, 2018, Defendant circulated a Welcome Email, announcing the hire of Mobley, Lindsay Moore, and Kim Goedeker. ("May Welcome Email")

22. Moore is Caucasian.

23. The May Welcome Email included a photograph of Moore.

24. Goedeker is Caucasian.

25.  The May Welcome Email included a photograph of Goedeker.

26. Mobley had his photo taken for the May Welcome Email.

27. The May Welcome Email did not include a photograph of Mobley.

28. The May Welcome Email included photographs of new Caucasian employees.

29. The May Welcome Email did not include photographs of new African American employees.

30. The May Welcome Email did not include a photograph of Mobley because Mobley is African American.

31. Mobley was offended by his exclusion from the May Welcome Email.

32. During Mobley's employment, he was assigned to Malcolm Waddle to receive training.

33. At all times, material herein, Defendant employed Waddle as a trainer.

34. At all times, material herein, Waddle had the power to hire and fire Defendant's employees.

35.   Waddle is Caucasian.

36.   Waddle regularly made inappropriate, racially charged remarks to Mobley.

37.   While Waddle was training Mobley, Waddle consistently referred to Mobley as "boy." ("Boy Comments")

38.   Waddle did not make comments similar to the Boy Comments to similarly situated non-African American employees.

39.   Waddle made the Boy Comments because Mobley is African American.

40.   Waddle made the Boy Comments because he is a racist.

41.   Waddle was perpetuating racially insensitive colloquialisms when he made the Boy Comments.

42.   At all times referenced herein, Defendant maintained a policy against unlawful discrimination and/or harassment on the basis of race ("Equal Employment Practices Policy").

43.   A Caucasian supervisor calling an employee "boy" because they are African American violates Defendant' Equal Employment Practices Policy.

44.   Alternatively, a supervisor calling an employee "boy" because they are African American is permitted by Defendant.

45.   Mobley was offended by the Boy Comments.

46.   Mobley asked Waddle to stop making the Boy Comments.

47.   Defendant's Equal Employment Practices Policy includes a policy to investigate reports of unlawful discrimination ("Investigation Policy").

48.   Pursuant to Defendant's Investigation Policy, an investigation should include interviewing the complainant.

49. Pursuant to Defendant's Investigation Policy, an investigation should include interviewing the subject of the complaint.

50. Pursuant to Defendant's Investigation Policy, an investigation should include interviewing the subject of the reported discrimination.

51. Pursuant to Defendant's Investigation Policy, an investigation should include interviewing witnesses to the reported discrimination.

52. Pursuant to Defendant's Investigation Policy, an investigation should include getting a written statement from the complainant.

53. Pursuant to Defendant's Investigation Policy, an investigation should include getting a written statement from the subject of the complaint.

54. Pursuant to Defendant's Investigation Policy, an investigation should include getting a written statement from the subject of the reported discrimination.

55. In or around June 2018, Mobley reported the Boy Comments to Ed Wilson. ("First Discrimination Complaint")

56. At all times referenced herein, Ford employed Wilson as a Production Manager.

57. At all times referenced herein, Wilson had the power to hire and fire Defendant's employees.

58. Wilson is Caucasian.

59. At all times referenced herein, Wilson supervised Mobley.

60. At all times referenced herein, Wilson supervised Waddle.

61. Wilson had a duty to report the First Race Discrimination Complaint to Defendant's Human Resources department.

62. Wilson had a duty to take action to stop Waddle from making the Boy Comments or making any other racial based comments to Mobley.

63. Upon information and belief, Wilson reported the First Race Discrimination Complaint to Defendant's Human Resource department.

64. Defendant had knowledge of the First Race Discrimination Complaint.

65. Defendant failed to investigate Mobley's First Race Discrimination Complaint.

66. Defendant failed to interview Mobley regarding his First Race Discrimination Complaint.

67. Defendant failed to interview Waddle regarding Mobley's First Race Discrimination Complaint.

68. Defendant failed to interview witnesses to the events leading to Mobley's First Race Discrimination Complaint.

69. Defendant failed to obtain a written statement from Mobley regarding his First Race Discrimination Complaint.

70. Defendant failed to obtain a written statement from Waddle regarding Mobley's First Race Discrimination Complaint.

71. Defendant failed to obtain written statements from witnesses to the events leading to Mobley's First Race Discrimination Complaint.

72. Defendant did not discipline Waddle based on Mobley's First Race Discrimination Complaint.

73. By not disciplining Waddle at all based on the First Race Discrimination Complaint, Defendant ratified Waddle's conduct.

74. By not disciplining Waddle at all based on the First Race Discrimination Complaint, Defendant allowed Waddle's conduct to continue.

75. Following the First Race Discrimination Complaint, Waddle continued making the Boy Comments.

76. During Mobley's employment, he made multiple requests for additional training in order to perform his job duties better. ("Training Requests")

77. Mobley made the Training Requests verbally and in writing.

78. The Training Requests included Mobley sending an email to Wilson and George Klucharik, on May 22, 2018, requesting additional robotics, unity pro, and Siemens training.

79. At all times, material herein, Defendant employed Klucharik as a Training Coordinator.

80. At all times, material herein, Klucharik had the power to hire and fire Defendant's employees.

81. Klucharik is Caucasian.

82. The Training Requests included Mobley emailing Wilson on May 31, 2018, requesting one on one meetings to ensure that Mobley was meeting expectations.

83. On June 7, 2018, Mobley met with Wilson and Sergio Frabotta. ("June Meeting")

84. At all times, material herein, Defendant employed Frabotta as a Senior Electrical Engineer.

85. Frabotta is Caucasian.

86. At the June Meeting, Wilson issued Mobley a verbal warning. ("June Verbal Warning")

87. According to Wilson, Mobley was issued the June Verbal Warning for leaving the plant for lunch, violating safety rules by walking into zones with a high volume of forklift traffic, walking while using a cell phone, and contesting criticism. ("Stated Basis for June Verbal Warning")

88. Wilson's stated basis for June Verbal Warning did not actually motivate Defendant to issue the June Verbal Warning.

89. Wilson's stated basis for June Verbal Warning was pretext to issue the June Verbal Warning.

90. Wilson did not issue discipline similar to the June Verbal Warning to similarly situated non-African American employees who left the plant for lunch.

91. Wilson did not issue discipline similar to the June Verbal Warning to similarly situated non-African American employees who violated safety rules by walking into zones with a high volume of forklift traffic.

92. Wilson did not issue discipline similar to the June Verbal Warning to similarly situated non-African American employees who walked while using a cell phone.

93. Wilson did not issue discipline similar to the June Verbal Warning to similarly situated non-African American employees who contested criticism.

94. Wilson did not issue discipline similar to the June Verbal Warning to similarly situated employees who had not made complaints similar to the First Race Discrimination Complaint.

95. Wilson issued the June Verbal Warning in retaliation for the First Race Discrimination Complaint.

96. Wilson issued the June Verbal Warning to Mobley because Mobley is African American.

97. Following the June Verbal Warning, Mobley continued to make Training Requests. ("Continued Training Request")

98. The Continued Training Requests included Mobley emailing Wilson on June 13, 2020, requesting one on one meetings to ensure that Mobley was meeting expectations.

99. The Continued Training Requests included Mobley sending an email Klucharik on June 19, 2018, requesting additional robotics, Unity Pro XL, and PL7 training.

100. Defendant denied Mobley's Training Requests and Continued Training Requests. Defendant did not deny non-African American employee's requests for additional training.

101. Defendant denied Mobley's Training Requests because Mobley is African American.

102. During Mobley's employment, Defendant issued nameplates to employees for their desks.

103. All of Mobley's non-African American coworkers had nameplates at their desks.

104. Defendant did not issue Mobley a nameplate for his desk.

105. Defendant did not issue Mobley a nameplate for his desk because he is African American.

106. Mobley was offended by Defendant's failure and refusal to provide him with a nameplate.

107. On June 7, 2018, Mobley verbally complained about not receiving a nameplate to Wilson and Frabotta.

108. Citing the failure of Defendant to include his photo in the May Welcome Email, Mobley told Wilson and Frabotta that he was "concerned" that Defendant's failure to provide him with a nameplate was based on his race. ("Second Race Discrimination Complaint").

109. Wilson responded to Mobley's Second Race Discrimination Complaint by dismissing it out of hand and calling it "ridiculous."

110. Following Mobley's Second Race Discrimination Complaint, Defendant did not issue Mobley a nameplate.

111. On June 19, 2018, Mobley sent Wilson and Frabotta an email again complaining that he did not have a nameplate.

112. Defendant continued to fail and refuse to issue Mobley a nameplate.

113. Defendant did not make non-African American employees make multiple requests for nameplates.

114. Defendant honored non-African American employees' requests for nameplates.

115. Mobley was offended that Defendant provided non-African American employees with nameplates but did not provide nameplates for their African American employees.

116. On or around June 18, 2018, Mobley met with Wilson. ("June Meeting")

117. At the June Meeting, Defendant issued Mobley a written warning. ("June Written Warning")

118. According to Defendant, Mobley was issued the June Written Warning for contesting criticism, leaving work for a doctor's appointment, leaving work early on a Saturday shift; and walking while using a cell phone.

119. Defendant's stated basis for June Written Warning was a pretext for retaliation because Mobley had made the Second Race Discrimination Complaint.

120. Defendant's stated basis for June Written Warning was a pretext for race discrimination.

121. Prior to leaving early, Mobley had notified his supervisor about his need to leave early for a doctor's appointment.

122. Defendant still did not issue discipline similar to the June Written Warning to similarly situated non-African American employees who walked while using a cell phone.

123. Defendant did not issue discipline similar to the June Written Warning to similarly situated non-African American employees who contested criticism.

124. Defendant did not issue discipline similar to the June Written Warning to similarly situated employees who had not made complaints about discrimination.

125. Defendant issued the June Written Warning in retaliation for the First Race Discrimination Complaint.

126. In response to the June Written Warning, Mobley submitted a handwritten complaint to Wilson. ("Third Race Discrimination Complaint").

127. In the Third Race Discrimination Complaint, Mobley complained that he was treated dissimilarly to his non-African American coworkers.

128. In the Third Race Discrimination Complaint, Mobley complained that Frabotta and Waddle spoke to him as if he was "less than or not human" because of his race.

129. Defendant had knowledge of the Third Race Discrimination Complaint.

130. Defendant failed to investigate Mobley's Third Race Discrimination Complaint.

131. Defendant failed to interview Mobley regarding his Third Race Discrimination Complaint.

132. Defendant failed to interview Waddle regarding Mobley's Third Race Discrimination Complaint.

133. Defendant failed to interview Frabotta regarding Mobley's Third Race Discrimination Complaint.

134. Defendant failed to interview witnesses to the events leading to Mobley's Third Race Discrimination Complaint.

135. Defendant failed to obtain a written statement from Mobley regarding his Third Race Discrimination Complaint.

136. Defendant failed to obtain a written statement from Waddle regarding Mobley's Third Race Discrimination Complaint.

137. Defendant failed to obtain a written statement from Waddle regarding Mobley's Third Race Discrimination Complaint.

138. Defendant failed to obtain written statements from witnesses to the events leading to Mobley's Third Race Discrimination Complaint.

139. Defendant did not investigate Mobley's Third Race Discrimination Complaint.

140. Defendant did not discipline Waddle based on Mobley's Third Race Discrimination Complaint.

141. By not disciplining Waddle at all based on the Third Race Discrimination Complaint, Defendant ratified Waddle's conduct.

142. By not disciplining Waddle at all based on the Third Race Discrimination Complaint, Defendant allowed Waddle's conduct to continue.

143. Defendant did not discipline Frabotta based on Mobley's Third Race Discrimination Complaint.

144. By not disciplining Frabotta at all based on the Third Race Discrimination Complaint, Defendant ratified Frabotta's conduct.

145. By not disciplining Frabotta at all based on the Third Race Discrimination Complaint, Defendant allowed Frabotta's conduct to continue.

146. On June 19, 2018, Mobley sent an email to Tyra Grier-Coleman in which he complained about "discriminatory treatment [he has] endured since being employed by Ford." ("Fourth Race Discrimination Complaint")

147. The discriminatory treatment alleged in Mobley's Fourth Race Discrimination Complaint included the Boy Comments.

148. The discriminatory treatment alleged in Mobley's Fourth Race Discrimination Complaint included Defendant's refusal to provide Mobley with a nameplate.

149. The discriminatory treatment alleged in Mobley's Fourth Race Discrimination Complaint included the Defendant's denial of Mobley's Training Requests.

150. The discriminatory treatment alleged in Mobley's Fourth Race Discrimination Complaint included the June Verbal Warning.

151. The discriminatory treatment alleged in Mobley's Fourth Race Discrimination Complaint included the June Written Warning.

152. At all times, material herein, Defendant employed Grier-Coleman as a Human Resources Manager.

153. At all times, material herein, Grier-Coleman had the power to hire and fire Defendant's employees.

154. Defendant had knowledge of the Fourth Race Discrimination Complaint.

155. Defendant failed to investigate Mobley's Fourth Race Discrimination Complaint.

156. Defendant failed to interview Mobley regarding his Fourth Race Discrimination Complaint.

157. Defendant failed to interview witnesses to the events leading to Mobley's Fourth Race Discrimination Complaint.

158. Defendant failed to obtain a written statement from Mobley regarding his Fourth Race Discrimination Complaint.

159. Defendant failed to obtain a written statement from Waddle regarding Mobley's Fourth Race Discrimination Complaint.

160. Defendant failed to obtain a written statement from Waddle regarding Mobley's Fourth Race Discrimination Complaint.

161. Defendant failed to obtain written statements from witnesses to the events leading to Mobley's Fourth Race Discrimination Complaint.

162. Defendant did not investigate Mobley's Fourth Race Discrimination Complaint.

163. Defendant did not act upon the Fourth Race Discrimination Complaint.

164. Defendant did not take steps to end the discriminatory treatment Mobley alleged in his Fourth Race Discrimination Complaint.

165. By not taking steps to end the discriminatory treatment Mobley alleged in his Fourth Race Discrimination Complaint, Defendant allowed the discriminatory treatment to continue.

166. On June 30, 2020, Mobley was working on a project with two electricians, Ron Brushaber and Rich Philips.

13

167. Brushaber is Caucasian.

168. Philips is Caucasian.

169. On June 30, 2018, Brushaber and Philips left the job site at 12:30 pm.

170. On June 30, 2018, Mobley included the fact that Brushaber and Philips left the job site at 12:30 pm in his daily email report to Wilson and Wally Koenig.

171. At all times, material herein, Defendant employed Koenig as a General Foreman.

172. At all times, material herein, Koenig had the power to hire and fire Defendant's employees.

173. At all times, material herein, Koenig was Brushaber and Philips' supervisor.

174. On July 1, 2018, Brushaber and Philips again left the job site at 12:30 pm.

175. On July 1, 2018, Mobley included the fact that Brushaber and Philips left the job site at 12:30 pm in his daily email report to Wilson and Koenig.

176. On July 2, 2018, Mobley was working on a project with Philips.

177. On July 2, 2018, Philips approached Mobley and asked if Mobley had reported that Philips had previously left the job site at 12:30 pm.

178. Mobley informed Philips that he had reported that Philips had previously left the job site at 12:30 pm.

179. After Mobley informed Philips that he had reported that Philips had previously left the job site at 12:30 pm, Philips called Mobley a "snitch." ("Snitch Comment")

180. Following the Snitch Comment, Philips made a gesture as though he were going to hit Mobley in the face. ("Threatening Gesture")

181. Philips did not engage in conduct similar to the Threatening Gesture with non-African American employees.

182. Philips made the Threatening Gesture because Mobley is African American.

183. Mobley was offended by the Threatening Gesture.

184. Following the Threatening Gesture, Philips pointed at Mobley and said, "I got my eyes on you." ("Threat")

185. Philips did not make comments similar to the Threat to non-African American employees.

186. Philips made the Threat because Mobley is African American.

187. Mobley was offended by the Threat.

188. An employee engaging in conduct similar to the Threatening Gesture, based on an employee's race, violates Defendant' Equal Employment Practices Policy.

189. Alternatively, Defendant permits employees to engage in conduct similar to the Threatening Gesture, based on an employee's race.

190. Comments similar to the Threat, based on an employee's race, violate Defendant's Equal Employment Practices Policy.

191. Alternatively, Defendant permits employees to make comments similar to the Threat, based on an employee's race.

192. On July 2, 2018, Mobley verbally reported the Threatening Gesture and the Threat to Koenig.

193. On July 2, 2018, Mobley sent an email to Wilson, Kenig, Grier-Coleman, and Alan Austin complaining about the Threatening Gesture and the Threat. ("Threat Complaint")

194. The Threat Complaint constituted protected activity under Defendant's Equal Employment Practices Policy.

195. Following the Threat Complaint, electricians no longer cooperated with Mobley on projects.

196. Electricians stopped cooperating with Mobley because Mobley made the Threat Complaint.

197. Not cooperating with an individual because an individual engaged in protected activity is an adverse action.

198. Not cooperating with an individual because an individual engaged in protected activity is an adverse employment action.

199. On July 9, 2020, Mobley met with Wilson and Frabotta. ("July Meeting")

200. At the July Meeting, Defendant issued Mobley a written warning. ("July Written Warning")

201. According to Defendant, Mobley was issued the July Written Warning for allegedly wearing headphones on the plant floor, not bringing his laptop to breakdowns, and not completing assigned tasks. ("July Written Warning")

202. Defendant's Stated Basis for the July Written Warning was not based in fact.

203. Defendant's stated basis for July Written Warning did not actually motivate Defendant to issue the July Written Warning.

204. Defendant's stated basis for the July Written Warning was pretext for race discrimination. .

205. Mobley had not been using headphones on the plant floor.

206. Non-African American employees regularly used headphones on the plant floor without facing discipline.

207. Mobley consistently brought his laptop to breakdowns.

208. The incomplete task which formed part of the basis for the July Written Warning was an order to count the type and number of ABB Robot batteries that required replacement. ("Battery Count")

209. The Battery Count had been assigned to Mobley by Frabotta at 10:47 am on June 21, 2018, with a completion deadline of close of business on June 21, 2018.

210.  Frabotta assigned the Battery Count with a four-hour deadline.

211. It was not feasible for an employee to complete the Battery Count in four hours.

212. Defendant did not require non-African American employees to complete tasks similar to the Battery Count in four hours.

213. It was not reasonable for Defendant to expect Mobley to complete the Battery Count in four hours.

214. Mobley informed Frabotta that it was not feasible for him to complete the Battery Count in four hours.

215. Mobley informed Frabotta that he would give his best effort to complete the Battery Count in a timely manner.

216. Mobley made his best effort to complete the Battery Count in a timely manner.

217. Defendant did not issue discipline similar to the July Written Warning to similarly situated non-African American employees for wearing headphones on the plant floor.

218. Defendant did not issue discipline similar to the JulyWritten Warning to similarly situated non-African American employees who did not complete tasks similar to the Battery Count, with an impossible deadline.

219. Defendant issued the July Written Warning in retaliation for the First Race Discrimination Complaint.

220. Defendant issued the July Written Warning in retaliation for the Second Race Discrimination Complaint.

221. Defendant issued the July Written Warning in retaliation for the Third Race Discrimination Complaint.

222. Defendant issued the July Written Warning in retaliation for the Fourth Race Discrimination Complaint.

223. On or around July 20, 2018, Defendant initiated an investigation into the Threat Complaint. ("Threat Investigation")

224. At the conclusion of the Threat Investigation, Defendant determined that Philips had engaged in inappropriate conduct in making the Threatening Gesture and the Threat,

225. At the conclusion of the Threat Investigation, Defendant did not suspend Philips.

226. At the conclusion of the Threat investigation, Defendant did not terminate Philips.

227. Defendant did not take meaningful disciplinary action against Philips for making the Threatening Gesture and the Threat.

228. In failing to take meaningful discipline against Phillips, Defendant treated Phillips favorably as compared to Mobley.

229. On August 3, 2018, Mobley sent an email to Wilson, Frabotta, Craig Weisman, and Brian Hylton, complaining that electricians were not cooperating with Mobley on assigned projects. ("Electrician Complaint")

230. At all times, material herein, Defendant employed Weisman as a maintenance supervisor.

231. At all times, material herein, Weisman had the power to hire and fire Defendant's employees.

232. Weisman is Caucasian.

233. At all times, material herein, Defendant employed Hylton as a manufacturing advisor.

234. At all times, material herein, Hylton had the power to hire and fire Defendant's employees.

235. Hylton is Caucasian.

236. In the Electrician Complaint, Mobley complained that he could not complete his job duties if the electrician did not cooperate on assigned projects.

237. Following the Electrician Complaint, Weisman confronted Mobley in front of other team members. ("August Confrontation")

238. During the August Confrontation, Weisman yelled at Mobley in front of his colleagues.

239. Weisman did yell at non-African American employees in front of their colleagues.

240. Weisman yelled at Mobley in front of his colleagues because Mobley is African American.

241. During the August Confrontation, Weisman told Mobley that he does not talk to him because Mobley makes complaints to human resources.

242. In admitting that he did not talk to Mobley because "Mobley complains to human resources," Weisman admitted that he was treating Mobley less favorably than other employees because Mobley had complained about race discrimination at Ford.

243. Weisman refused to talk to Mobley because Mobley is African American.

244. Following the August Confrontation, Mobley emailed Grier-Coleman and Carole Roberts, complaining about the August Confrontation ("August Complaint").

245. At all times, material herein, Defendant employed Roberts as a labor relations supervisor.

246. At all times, material herein, Roberts had the power to hire and fire Defendant's employees.

247. Roberts is Caucasian.

248. In the August Complaint, Mobley complained that the August Confrontation was retaliation for his previous complaints of discrimination.

249. In the August Complaint, Mobley complained that Weisman was retaliating against him by not speaking to Mobley and withholding resources Mobley required to do his job.

250. Defendant investigated the August Complaint. ("August Investigation")

251. Following Defendant's August Investigation, Defendant did not suspend Weisman.

252. Following Defendant's August Investigation, Defendant did not demote Weisman.

253. Following Defendant's August Investigation, Defendant did not terminate Weisman.

254. Defendant did not take remedial action against Weisman based on the August Complaint.

19

255.  Defendant did not adequately discipline Weisman to deter future discriminatory conduct.

256.  By not adequately disciplining Weisman based on the August Complaint, Defendant ratified Weisman's conduct.

257.  By not adequately disciplining Weisman based on the August Complaint, Defendant allowed Weisman's conduct to continue.

258.  On October 3, 2018, Defendant issued Mobley a written warning. ("October Written Warning")

259.  According to Defendant, Mobley was issued the October Written Warning for not shadowing Waddle and not completing assigned tasks. ("October Written Warning")

260.  Defendant's stated basis for the October Written Warning was not based on fact.

261.  Defendant's stated basis for the October Written Warning did not actually motivate Defendant to issue the October Written Warning.

262.  Defendant's stated basis for the October Written Warning was pretext to issue the October Written Warning.

263.  Waddle had continued making the Boy Comments well into October 2018.

264.  In October 2018, Defendant was aware of the Boy Comments.

265.  Defendant did not issue discipline similar to the October Written Warning to similarly situated non-African American employees who had a task completion rate similar to Mobley's.

266.  Defendant did not issue discipline similar to the October Written Warning to similarly situated non-African American employees whose job performance was similar to Mobley's.

267.  Defendant issued the October Written Warning because of Mobley's race.

268. Defendant issued the October Written Warning in retaliation for the First Race Discrimination Complaint.

269. Defendant issued the October Written Warning in retaliation for the Second Race Discrimination Complaint.

270. Defendant issued the October Written Warning in retaliation for the Third Race Discrimination Complaint.

271. Defendant issued the October Written Warning in retaliation for the Fourth Race Discrimination Complaint.

272. Defendant issued the October Written Warning in retaliation for the Threat Complaint.

273. Defendant issued the October Written Warning in retaliation for the August Complaint.

274. On or around October 17, 2018, Mobley was working on a malfunctioning assembly line. ("October Line Incident")

275. During the October Line Incident, Herman, Last Name Unknown, was assigned to work with Mobley on the malfunctioning line.

276. At all times, material herein, Defendant employed Herman LNU as an electrician.

277. Mobley was not permitted to perform work on a malfunctioning line without an electrician present.

278. During the October Line Incident, Herman LNU left the job site without informing Mobley.

279. After Herman LNU left the job site, Dale, Last Name Unknown, approached Mobley and accused him of working without an electrician. ("Dale Confrontation")

280. At all times, material herein, Defendant employed Dale LNU.

281. At all times, material herein, Dale LNU served as a union steward in Defendant's Cleveland Facility.

282. During the Dale Confrontation, Dale LNU began screaming at Mobley.

283. During the Dale Confrontation, Dale LNU engaged in conduct that made Mobley feel unsafe.

284. Dale LNU was a coworker of Philips.

285. Dale LNU was Philips' union steward.

286. As a union steward, Dale LNU had knowledge of the Threat Complaint Mobley made against Philips.

287. Dale LNU did not engage in conduct similar to the Dale Confrontation with non-African American employees who were similarly situated to Mobley.

288. Dale LNU did not engage in conduct similar to the Dale Confrontation with employees similarly situated to Mobley, who had not made complaints similar to the Threat Complaint.

289. Dale engaged in the Dale Confrontation because Mobley is African American.

290. Dale engaged in the Dale Confrontation because Mobley made the Threat Complaint.

291. On or around October 17, 2018, Mobley made a verbal complaint about the Dale Confrontation to Jones, First Name Unknown. ("Dale Complaint")

292. At all times, material herein, Defendant employed Jones as a human resources representative.

293. At all times, material herein, Jones had the power to hire and fire Defendant's employees.

294. Defendant investigated Mobley's Dale Complaint. ("Dale Investigation")

295. Following Defendant's Dale Investigation, Defendant did not suspend Dale LNU.

296. Following Defendant's Dale Investigation, Defendant did not demote Dale LNU.

297. Following Defendant's Dale Investigation, Defendant did not terminate Dale LNU.

298. Defendant did not take remedial action against Dale LNU based on the Dale Complaint.

299. Defendant did not adequately discipline Dale LNU to deter future discriminatory conduct.

300. By not adequately disciplining Dale LNU based on the Dale Complaint, Defendant ratified Dale LNU's conduct.

301. By not adequately disciplining Dale LNU based on the Cart Complaint, Defendant allowed Dale LNU's conduct to continue.

302. On or around October 29, 2018, Mobley informed Andy Kital that he needed to use the computer cart located near Kital's desk. ("Cart Incident")

303. At all times, material herein, Defendant employed Kital as a data engineer.

304. Kital is Caucasian.

305. Mobley had frequently used the cart in question during the Cart Incident for months prior to the Cart Incident.

306. Defendant's employees are required to share computer carts.

307. Mobley requires the occasional use of a computer cart in order to perform his job duties.

308. During the Cart Incident, Kital told Mobley that Mobley could not use the cart.

309. During the Cart Incident, Kital told Mobley that the cart in question was Kital's and that Kital could "use it whenever I want to use it."

310. During the Cart Incident, the cart was chained to Kital's desk.

311. Kital did not refuse Non-African American employee's requests to use the cart in question during the Cart Incident.

312. Kital refused Mobley's request to use the cart in question during the Cart Incident because Mobley is African American.

313. On or around October 29, 2018, Mobley made a verbal complaint to Jones about the Cart Incident. ("Cart Complaint")

314. On November 5, 2018, Defendant issued Mobley a Written Warning. ("November Written Warning")

315. According to Defendant, Mobley was issued the November Written Warning for not shadowing Waddle and being rude to other employees. ("Stated Basis for November Written Warning")

316. Defendant's stated basis for the November Written Warning was not based on fact.

317. Defendant's stated basis for the November Written Warning did not actually motivate Defendant to issue the November Written Warning.

318. Defendant's stated basis for the November Written Warning was pretext to issue the November Written Warning.

319. Waddle had continued making the Boy Comments well into November 2018.

320. In November 2018, Defendant was aware of the Boy Comments.

321. Defendant did not issue discipline similar to the November Written Warning to similarly situated non-African American employees who had similar attitudes towards coworkers as Mobley.

322. Defendant did not issue discipline similar to the November Written Warning to similarly situated non-African American employees who had been rude to Mobley.

323. Defendant did not issue discipline similar to the November Written Warning to similarly situated non-African American employees whose job performance was similar to Mobley's.

324. Defendant issued the November Written Warning in retaliation for the First Race Discrimination Complaint.

325. Defendant issued the November Written Warning in retaliation for the Second Race Discrimination Complaint.

326. Defendant issued the November Written Warning in retaliation for the Third Race Discrimination Complaint.

327. Defendant issued the November Written Warning in retaliation for the Fourth Race Discrimination Complaint.

328. Defendant issued the November Written Warning in retaliation for the Threat Complaint.

329. Defendant issued the November Written Warning in retaliation for the August Complaint.

330. Defendant issued the November Written Warning in retaliation for the Dale Complaint

331. Defendant issued the November Written Warning in retaliation for the Cart Complaint.

332. In or around November 2018, Defendant began investigating the Cart Complaint. ("November Investigation")

333. On or around November 7, 2018, Mobley provided Defendant with a written statement regarding the Cart Complaint.

334. Following Defendant's November Investigation, Defendant did not suspend Kital.

335. Following Defendant's November Investigation, Defendant did not demote Kital.

336. Following Defendant's November Investigation, Defendant did not terminate Kital.

337. Defendant did not take remedial action against Kital based on the Cart Complaint.

338. Defendant did not adequately discipline Kital to deter future discriminatory conduct.

339. By not adequately disciplining Kital based on the Cart Complaint, Defendant ratified Kital's conduct.

340. By not adequately disciplining Kital based on the Cart Complaint, Defendant allowed Kital's conduct to continue.

341. On or around January 4, 2019, Mobley was speaking with an African American production worker. ("January Conversation")

342. During the January Conversation, Mobley was approached by Lori Platt.

343. At all times, material herein, Defendant employed Platt as a Senior Process Coach.

344. At all times, material herein, Platt had the power to hire and fire Defendant's employees.

345. Platt is Caucasian.

346. Platt interrupted the January Conversation, telling Mobley that he could not speak to the African American employee.

347. Platt did not interrupt conversations between non-African American employees.

348. Platt did not tell non-African American employees that they could not speak to each other.

349. Platt interrupted the January Conversation because the participants were African American.

350. While interrupting the January Conversation, Platt put her finger in Mobley's face and told him that she "warned him." ("Platt's Threat")

351. On January 5, 2020, Mobley emailed Grier-Coleman, complaining about Platt interrupting the January Conversation and Platt's Threat. ("January Complaint")

352. Defendant investigated the January Complaint. ("January Investigation")

353. Following Defendant's January Investigation, Defendant did not suspend Platt.

354. Following Defendant's January Investigation, Defendant did not demote Platt.

355. Following Defendant's January Investigation, Defendant did not terminate Platt.

356. Defendant did not take prompt remedial action against Platt based on the January Complaint.

357. Defendant did not adequately discipline Platt to deter future discriminatory conduct.

358. By not adequately disciplining Platt based on the January Complaint, Defendant ratified Platt's conduct.

359. By not adequately disciplining Platt based on the January Complaint, Defendant allowed Platt's conduct to continue.

360. On or around January 10, 2019, Mobley met with Wilson. ("First January Meeting")

361. At the First January Meeting, Defendant issued Mobley a written warning. ("January Written Warning")

362. According to Defendant, Mobley was issued the January Written Warning for not shadowing Waddle, allegedly using headphones on the work floor, using his cell phone while working, and talking to other employees.

363. Defendant's stated basis for the January Written Warning was not based on fact.

364. Defendant's stated basis for the First January Written Warning did not actually motivate Defendant to issue the First January Written Warning.

365. Defendant's stated basis for the First January Written Warning was pretext to issue the First January Written Warning.

366. Waddle retired in or around December 2018.

367. Mobley could not shadow Waddle in January 2019 because Waddle was no longer employed by Defendant.

368. Defendant did not issue discipline similar to the First January Written Warning to non-African American employees for failing to meet objectives that were impossible to perform.

369. Disciplining Mobley for failing to complete an objective that was impossible to perform was an adverse action.

370. Disciplining Mobley for failing to complete an objective that was impossible to perform was an adverse employment action.

371. Defendant did not issue discipline similar to the January Written Warning to similarly situated non-African American employees who allegedly used headphones on the plant floor.

372. Defendant did not issue discipline similar to the January Written Warning to similarly situated non-African American employees who allegedly used their cell phones on the plant floor.

373. Defendant did not issue discipline similar to the January Written Warning to similarly situated non-African American employees spoke to other employees.

374. Defendant issued the January Written Warning in retaliation for the First Race Discrimination Complaint.

375. Defendant issued the January Written Warning in retaliation for the Second Race Discrimination Complaint.

376. Defendant issued the January Written Warning in retaliation for the Third Race Discrimination Complaint.

377. Defendant issued the January Written Warning in retaliation for the Fourth Race Discrimination Complaint.

378. Defendant issued the January Written Warning in retaliation for the Threat Complaint.

379. Defendant issued the January Written Warning in retaliation for the August Complaint.

380. Defendant issued the January Written Warning in retaliation for the Dale Complaint

381. Defendant issued the January Written Warning in retaliation for the Cart Complaint

382. Defendant issued the January Written Warning in retaliation for the January Complaint.

383. On or around February 8, 2019, Mobley met with Grier-Coleman and Melissa Dudley. ("February Meeting")

384. At the February Meeting, Defendant issued Mobley a written warning. ("February Written Warning")

385. According to Defendant, Mobley was issued the February Written Warning for his role in the January Conversation. ("Stated Basis for February Written Warning")

386. Defendant's stated basis for the February Written Warning was not based on fact.

387. Defendant's stated basis for the February Written Warning did not actually motivate Defendant to issue the February Written Warning.

388. Defendant's stated basis for the February Written Warning was pretext to issue the February Written Warning.

389. Defendant did not discipline Platt for her conduct during the January Conversation.

390. Defendant did not issue discipline similar to the February Written Warning to similarly situated non-African American employees who engaged in similar conduct.

391. Defendant issued the February Written Warning in retaliation for the Threat Complaint.

392. Defendant issued the February Written Warning in retaliation for the August Complaint.

393. Defendant issued the February Written Warning in retaliation for the Cart Complaint.

394. Defendant issued the February Written Warning in retaliation for the Dale Complaint.

395. Defendant issued the February Written Warning in retaliation for the January Complaint.

396. On or around March 25, 2019, Mobley met with Dudley and an unidentified female employee. ("March Meeting")

397. Defendant terminated Mobley's employment at the March Meeting.

398. According to Defendant, Mobley was terminated due to his history of Written Warnings.

399. Defendant's stated basis for ermination has no basis in fact.

400. Defendant's stated basis for Termination did not actually motivate Defendant's decision to terminate Mobley.

401. Defendant's stated basis for Termination was insufficient to motivate the termination of Mobley.

402. Defendant's stated basis for Termination was pretext to terminate Mobley.

403. Defendant did not terminate similarly situated non-African American employees for the Stated Basis for Termination.

404. Defendant did not terminate similarly situated non-African American employees for baseless written warnings.

405. Defendant knowingly terminated Mobley's employment.

406. Defendant knowingly took an adverse employment action against Mobley.

407. Defendant knowingly took an adverse action against Mobley.

408. Defendant intentionally terminated Mobley's employment.

409. Defendant intentionally took an adverse employment action against Mobley.

410. Defendant intentionally took an adverse action against Mobley.

411. Defendant knew that terminating Mobley would cause Mobley harm, including economic harm.

412. Defendant willfully terminated Mobley's employment.

413. Defendant willfully took an adverse employment action against Mobley.

414. Defendant willfully took an adverse action against Mobley.

415. The above facts demonstrate that Defendant engaged in a pattern and practice of race discrimination.

416. The above facts demonstrate that Defendant engaged in a pattern and practice of unlawful retaliation.

417. There was a causal connection between Mobley's race and Defendant's termination of Mobley.

418. There was a causal connection between Mobley's protected complaints and Defendant's termination of Mobley.

419. As a direct and proximate result of Defendant's conduct, Mobley suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT I: UNLAWFUL RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e-2(a), *et seq*.

420.  Mobley re-alleges and incorporates by reference the allegations set forth in paragraphs 1-419 above.

421. Defendant subjected Mobley to different employment rules, practices, and standards because of his race in violation of 42 U.S.C. § 2000e-2(a).

422. Defendant terminated Mobley from his employment without just cause because of his race in violation of 42 U.S.C. § 2000e-2(a).

423. Defendant's discrimination against Mobley violated the rights secured to Mobley by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991.

424. By the conduct described above, Defendant intentionally violated Mobley's rights under Title VII.

425. As a result of the violation of Mobley's Title VII rights, Mobley is entitled to equitable and injunctive relief, including "rightful place" and "make whole" remedies and equitable monetary relief, to remedy and compensate for the effects of Defendant's unlawful actions.

426. In its discriminatory actions as alleged above, Defendant acted with malice or reckless indifference to Mobley's rights, thereby entitling Mobley to an award of punitive damages.

31

427. To remedy the violation of Mobley's rights secured by Title VII, Mobley request that the Court award him the relief prayed for below.

## COUNT II: RETALIATORY WRONGFUL TERMINATION IN VIOLATION OF 42 U.S.C. § 2000e-3(a).

428. Mobley re-alleges and incorporates by reference the allegations set forth in paragraphs 1-427 above.

429. Mobley engaged in protected activity when opposed racial harassment and discrimination while employed by Defendant.

430. As a result of Mobley's opposing racial harassment and discrimination, Defendant and its agents escalated their harassment and mistreatment of Mobley.

431. As a result of Mobley's opposing racial harassment and discrimination, Defendant and its agents took disciplinary action against Mobley.

432.  As a result of Mobley's opposing racial harassment and discrimination, Defendant terminated his employment.

433. There was a causal connection between Mobley's complaints and the materially adverse actions taken against Mobley by Defendant and its agents.

434. The retaliation endured by Mobley would dissuade a reasonable employee from making complaints of discrimination and harassment.

435. Defendant retaliated against Mobley for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

436. Defendant's retaliation against Mobley violated the rights secured to Mobley by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e et seq., as amended by the Civil Rights Act of 1991.

437.  By the retaliatory conduct described above, Defendant intentionally violated Mobley's rights under Title VII.

438.  As a result of the violation of Mobley's Title VII rights, Mobley is entitled to equitable and injunctive relief, including "rightful place" and "make whole" remedies and equitable monetary relief, to remedy and compensate for the effects of Defendant's unlawful actions.

439.  In their retaliatory actions as alleged above, Defendant has acted with malice or reckless indifference to Mobley's rights, thereby entitling Mobley to an award of punitive damages.

440.  To remedy the violation of Mobley's rights secured by Title VII, Mobley request that the Court award him the relief prayed for below.

## COUNT III: UNLAWFUL RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981.

441.  Mobley re-alleges and incorporates by reference the allegations set forth in paragraphs 1-440 above.

442.  Defendant's discrimination against Mobley violated the rights afforded to Mobley under the Civil Rights Act of 1866, 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991.

443.  By the conduct described above, Defendant intentionally deprived Mobley of the same rights as are enjoyed by Caucasian citizens to the creation, performance, enjoyment, and all benefits and privileges, of his employment relationship with Defendant, in violation of Section 1981.

444.  As a result of Defendant's discrimination in violation of Section 1981, Mobley has been denied employment opportunities providing substantial compensation and benefits, thereby entitling Mobley to injunctive and equitable monetary relief.

445.  In its discriminatory actions as alleged above, Defendant has acted with malice or reckless indifference to the rights of Mobley, thereby entitling Mobley to an award of punitive damages.

33

446.  To remedy the violations of the rights of Mobley secured by Section 1981, Mobley requests that the Court award him the relief prayed for below.

## COUNT IV: UNLAWFUL RETALIATION IN VIOLATION OF 42 U.S.C. § 1981.

447.  Mobley re-alleges and incorporates by reference the allegations set forth in paragraphs 1-446 above.

448.  Defendant has violated Section 1981 by subjecting Mobley to retaliation for his protected complaints and opposition to Defendant's discriminatory comments on the basis of race by *inter alia*, terminating Plaintiff's employment.

449.  As a direct and proximate result of Defendant' unlawful retaliatory conduct in violation of Section 1981, Mobley has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

450.  Defendant's unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

451.  To remedy the violations of the rights of Mobley secured by Section 1981, Mobley requests that the Court award him the relief prayed for below.

## COUNT V: UNLAWFUL RACE DISCRIMINATION IN VIOLATION OF R.C.§ 4112.01 *et seq.*

452.  Mobley re-alleges and incorporates by reference the allegations set forth in paragraphs 1-451 above.

453.  Defendant subjected Mobley to different employment rules, practices, and standards because of his race in violation of R.C.§ 4112.01 *et seq.*

454. Defendant terminated Mobley from his employment without just cause because of his race in violation of R.C.§ 4112.01 *et seq.*

455. Defendant's discrimination against Mobley violated the rights secured to Mobley by R.C.§ 4112.01 *et seq.*

456. By the conduct described above, Defendant intentionally violated Mobley's rights under R.C.§ 4112.01 *et seq.*

457. As a result of the violation of Mobley's R.C.§ 4112.01 *et seq.* rights, Mobley is entitled to equitable and injunctive relief, including "rightful place" and "make whole" remedies and equitable monetary relief, to remedy and compensate for the effects of Defendant's unlawful actions.

458. In its discriminatory actions as alleged above, Defendant acted with malice or reckless indifference to Mobley's rights, thereby entitling Mobley to an award of punitive damages.

459. To remedy the violation of Mobley's rights secured by R.C.§ 4112.01 *et seq.*, Mobley request that the Court award him the relief prayed for below.

## COUNT VI: RETALIATORY WRONGFUL TERMINATION IN VIOLATION OF R.C.§ 4112.02(I)

460. Mobley re-alleges and incorporates by reference the allegations set forth in paragraphs 1-459 above.

461. Mobley engaged in protected activity when opposed racial harassment and discrimination while employed by Defendant.

462. As a result of Mobley's opposing racial harassment and discrimination, Defendant and its agents escalated their harassment and mistreatment of Mobley.

463. As a result of Mobley's opposing racial harassment and discrimination, Defendant and its agents took disciplinary action against Mobley.

464.  As a result of Mobley's opposing racial harassment and discrimination, Defendant terminated his employment.

465.  There was a causal connection between Mobley's complaints and the materially adverse actions taken against Mobley by Defendant and its agents.

466.  The retaliation endured by Mobley would dissuade a reasonable employee from making complaints of discrimination and harassment.

467.  Defendant retaliated against Mobley for engaging in protected activity in violation of R.C.§ 4112.02(I).

468.  Defendant's retaliation against Mobley violated the rights secured to Mobley by R.C.§ 4112.02(I).

469.  By the retaliatory conduct described above, Defendant intentionally violated Mobley's rights under R.C.§ 4112.02(I).

470.  As a result of the violation of Mobley's R.C.§ 4112.02(I) rights, Mobley is entitled to equitable and injunctive relief, including "rightful place" and "make whole" remedies and equitable monetary relief, to remedy and compensate for the effects of Defendant's unlawful actions.

471.  In their retaliatory actions as alleged above, Defendant has acted with malice or reckless indifference to Mobley's rights, thereby entitling Mobley to an award of punitive damages.

472.  To remedy the violation of Mobley's rights secured by R.C.§ 4112.02(I)., Mobley request that the Court award him the relief prayed for below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Christopher Mobley requests judgment in his favor against Defendant, containing the following relief:

(a) A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States;

(b) An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

(c) An order directing Defendants to place Mobley in the position he would have occupied but for Defendants' discriminatory, retaliatory and/or otherwise unlawful treatment of him, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices and other unlawful conduct are eliminated and do not continue to affect Mobley;

(d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mobley for all monetary and/or economic damages, including, but not limited to, the loss of past and future income, wages, compensation, job security and other benefits of employment;

(e) Awarding against each Defendant compensatory and monetary damages to compensate Mobley for lost wages, emotional distress, and other consequential damages, in an amount to be proven at trial;

(f) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mobley for all non-monetary and/or compensatory damages, including, but not limited to, compensation for his severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

(g) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Mobley for harm to his professional and personal reputation and loss of career fulfillment;

(h) An award of damages for any and all other monetary and/or non-monetary losses suffered by Mobley in an amount to be determined at trial, plus prejudgment interest;

(i) An award of punitive damages;

(j) An award of costs that Mobley has incurred in this action, as well as Mobley's reasonable attorneys' fees to the fullest extent permitted by law; and

(k) Awarding such other and further relief that this Court deems necessary and proper.

Respectfully submitted,


/s/Christopher P. Wido
Chris P. Wido (0090441)
Samuel B. Robb (0099035)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email:  chris.wido@spitzlawfirm.com
        Sam.robb@spitzlawfirm.com


*Attorneys For Plaintiff Christopher Mobley*

## **JURY DEMAND**

Plaintiff Christopher Mobley demands a trial by jury by the maximum number of jurors permitted.

*/s/Christopher P. Wido*

Chris P. Wido (0090441)

Samuel B. Robb (0099035)

**THE SPITZ LAW FIRM, LLC**
